LeSUEUR, Judge.
Defendants, Roland Jee and Connecticut Fire Insurance Company, have appealed a judgment rendered against them, in solido, in favor of Lillie Ann Jenkins Green in the amount of $4,250.00 for personal injuries and in favor of Robert Green in the amount of $395.80 for medical expenses.
Lillie Ann Jenkins Green (“Mrs. Green”), a tenant, brought this action against Roland Jee, her landlord, and his insurer, Connecticut Fire Insurance Company (“Connecticut”), for injuries suffered when a board on the front porch of the rental property gave way, causing her to fall forward to the sidewalk below. Her husband, Robert Green, joined in the action for the medical expenses of an operation performed at Charity Hospital to correct a problem that Mrs. Green developed in both wrists. The action was filed in December, 1964, and, after many delays, tried on December 14, 1967, and February 7,-1968. Jee and Connecticut claimed that Mrs. Green could not recover for she was guilty of contributory negligence in using the porch which she knew was unsafe and that neither Mr. nor Mrs. Green could recover for the additional reason that they had not proven that the injuries subsequently complained of and operated on were related to the accident. Judgment was rendered in favor of both Mr. and Mrs. Green and Jee and Connecticut appealed the issues of both liability and quantum.
Mrs. Green bases her cause of action on Civil Code Art. 2695 which states:
“The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.”
Both Mr. and Mrs. Green testified that the porch was “rotten” and in a “rotten condition”, that it had not been properly maintained for almost 2 years, and that defendant knew of the condition of the porch. The landlord did not deny that plaintiffs had complained about the condition of the porch and stated that he had painted the porch shortly before plaintiff fell. While defendant Jee acknowledged that Mrs. Green probably fell from the porch of her residence, he argued that plaintiff’s knowledge of the deteriorated condition of the porch and her subsequent use of it in spite of that knowledge constituted contributory negligence which barred any recovery on her part. He cites Turner v. Aetna Casualty and Surety Company, 175 So.2d 304 (1965) and Prudhomme v. Berry, 69 So.2d 620 (1953), both Second Circuit Court of Appeals cases, as authority for his position.
In the case of Anslem v. Travelers Insurance Company, 192 So.2d 599 (La.App. 3rd Cir. 1966), Judge Tate at page 600 reviewed the applicable legal principles regarding liability in landlord-tenant actions and observed that:
“An owner-lessor is held to strict liability, i. e., to liability without fault, for *155 personal injuries sustained by his tenant or others through the defective condition of the premises; neither the landlord’s ignorance of the defect nor its latency will defeat the injured person’s recovery. (Citations omitted.)
“On the other hand, not every defect causing injury is actionable, only those of a nature reasonably expected to cause injury to persons using ordinary care under the circumstances. (Citations omitted.) Likewise, although the injured person’s prior knowledge of the defective condition will not by itself defeat his recovery, his contributory negligence may do so if the injured person was fully aware that the defect was so dangerous that the premises could not be used even with the exercise of due care. (Citations omitted.)”
The Turner and Prudhomme cases, supra, both dealt with plaintiffs stepping through a hole which they knew was in a porch or floor. The court in both cases found that the plaintiffs were guilty of contributory negligence and hence could not recover any damages.
In the present case there was no hole visible in the porch. The terminology used by the Greens, that the porch was “rotten”, was apparently used to convey the idea that the porch was not properly maintained as opposed to the idea that the porch as a whole was falling down in ruin. Although the Greens described the whole porch as “rotten”, a close review of their testimony and the photographs filed in evidence shows that they were referring to the very ends of porch boards and the facing board that runs immediately under the ends of the porch boards. These areas show definite signs of deterioration while the area that plaintiff claims to have stepped on appears on its surface to be firm and usable. Plaintiff’s case is strengthened by the fact that defendant painted the porch and plaintiff was unable to adequately determine whether the porch had been repaired before it was painted or where any deteriorated areas had been located. The defendant performed the work on the porch and it would be reasonable for Mrs. Green to assume that he would repair the porch before painting it and would not paint over the rotten porch, thereby creating a virtual trap. The photographs of the porch in the area of Mrs. Green’s accident tend to bear out the reasonableness of this assumption. Defendants have not proven, in support of their claim, that Mrs. Green knew or should have known that the rotten and unsafe condition of the porch remained after it was painted.
We find the case of Murray v. Patton, 118 So.2d 704 (La.App. Orleans 1960) to be more apposite to the present case. The court said at pages 706-707:
“ * * * Mrs. Murray knew that the steps were in a generally defective condition and knew that one of the treads had given way under the weight of her young daughter. We must follow this, however, with the statement that there is nothing in the record to show that all of the steps were in a bad condition, and we must also realize that there was no way to enter or leave the rented apartment except by means of that stairway.
“ * * * the rule laid down by the Supreme Court is that knowledge of a ‘generally defective condition’ will not defeat an action ‘unless the particular defect which caused the injury is such as to indicate apparent, imminent danger.’ See, also, Ruling Case Law, vol. 16 § S68, p. 104, in which appears the following:
‘It is generally held that the mere fact that a tenant is aware of the defective condition of a portion of the premises which it is the duty of the landlord to repair does not as a matter of law make it contributory negligence to continue the use of the same, if it reasonably appears that he might safely do so with the exercise of care.’ ”
We find that Mrs. Green’s porch was not so apparently defective that she *156 could not reasonably use in safety that portion of it which caused her accident through the exercise of due care and that she was not contributorily negligent in her use of the porch.
Defendant alternatively seeks a reduction in quantum of plaintiff’s judgment for personal injuries, pain and suffering.
Mrs. Green claimed that a board on her front porch gave way and caused her to fall forward to the sidewalk below. On the date of the accident, January 20, 1964, she was approximately 5 months pregnant with her sixth child. Mrs. Green at that time allegedly fell flat on the sidewalk, striking her chest, stomach, hands and knees. She was helped inside and put to bed. She sought medical attention later that day and again the next day, but no evidence was offered as to the diagnosis or treatment given on either of those visits to the doctor.
On January 27, 1964, plaintiff was examined by Dr. Longacre. She complained of pain in the abdomen, left hip, right wrist and forearm, her knees and back. Dr. Longacre’s examination failed to disclose objective symptoms other than tenderness of the right knee and failed to find any evidence of specific injury to the bony framework or musculature of Mrs. Green. He subsequently had X-rays taken of her right knee, right elbow and of her abdomen but the X-rays did not disclose any injury. Dr. Longacre at no time was of the opinion that the pains plaintiff complained of in her wrists were the result of anything other than her pregnancy.
In March, 1964, Mrs. Green saw Dr. Hill due to her concern for her child, based on its lack of movement and fetal heartbeat and her abdominal pains. Dr. Hill diagnosed her abdominal pains as false labor pains and stated that her symptoms were normal for a woman at Mrs. Green’s stage of pregnancy. She complained to him about a breast pain also and at a later visit he found that the breast was discharging fluid and informed Dr. Longacre of this fact.
In May, 1964, Dr. Longacre arranged for her to be hospitalized for examination of her breast but the examination was not performed for financial reasons. The breast condition eventually resolved itself about the time the child was born. Throughout the ten months that Mrs. Green was treated by Dr. Longacre she complained of wrist and back pains but Dr. Longacre was unable to find objective bases for these pains.
In June, 1964, Mrs. Green delivered the baby she was carrying at the time of the accident. Her delivery and the child were both normal.
In September and October, 1964, Mrs. Green went through the Neurosurgical, Gynecological and Orthopedic Clinics at Charity Hospital. At the Orthopedic Clinic X-rays were taken of her lumbar spine and lumbosacral areas. The results of all of these tests were negative.
On March 25, 1965, Mrs. Green was seen at Charity Hospital for pain in her hand. Mrs. Green was again pregnant and stated that the hand had hurt for 2 days. On April 19, 1965, she was again seen for a pain in her left wrist. She stated that she had fallen 3 or 4 days prior to that examination. (Emphasis added.) Her wrist was X-rayed and placed in a cast. The X-rays revealed an old fracture in the wrist and the cast was removed because it would provide no medical benefit for the old fracture.
In June, 1965, Mrs. Green was seen by Dr. Saer for examination of an orthopedic nature. Dr. Saer found a fullness of the forearm an inch or two above the wrist. Plaintiff complained of pain in both wrists; based on the type of pain and the areas of pain of which Mrs. Green complained, Dr. Saer concluded that plaintiff was suffering from carpal tunnel syndrome. He attributed the pain of the wrists and the numbness and lack of sweating of the hands to Mrs. Green’s pregnancy. He also considered the possibility that plaintiff was *157 experiencing de Quervain’s disease, which is another wrist condition, usually developmental not traumatic in origin, hut related to pregnancy. Dr. Saer also attributed her complaints of back pain to her being pregnant.
In January, 1966, Charity Hospital operated on plaintiff for bilateral de Quervain’s disease of both wrists. After the operation her wrists were placed in casts for approximately 2 months. The operation-,reduced the pain in plaintiff’s wrists, although she claims that she is still unable to resume her normal housework.
The following factors point to the conclusion that the two major aspects of plaintiff’s claim for damages, her back and wrist pains, were not related to the accident at issue:
1. Dr. Longacre’s opinion that there were no signs of injury and that the wrist and back pains were probably due to pregnancy;
2. The findings of the Orthopedic and Neurosurgical Clinics of Charity Hospital, after examining Mrs. Green when she was not pregnant, that there was nothing wrong with her back;
3. Mrs. Green’s statement at Charity Hospital that the pain in March, 1965, started after she became pregnant and the pain in April, 1965, started after a fall a few days earlier;
4. Dr. Saer’s opinion that the wrist and back complaints were due to pregnancy.
Based on the foregoing medical testimony, we find that plaintiff has not proven injuries of a continuing nature that are related to her accident, especially the wrist injuries that necessitated corrective surgery. She sustained some injuries and also experienced some anxiety for the child she was bearing. These items constitute legal bases for an award of damages. The award, however, of the trial court is excessive in light of similar cases and is hereby reduced to $2,000.00. Mayon v. McWood Corp., 182 So.2d 143 (La.App.1966); Neames v. Fidelity General Insurance Company, 206 So.2d 575 (La.App.1968); and Adams v. Kimble, 208 So.2d 14 (La.App.1968).
The granting of an award by the trial court in favor of Robert Green for hospital expenses in the amount of $395.80 was erroneous because the wrist operation that was the basis for the hospital bill was not found to be necessitated by or related to the accident and that judgment is reversed.
The judgment of the trial court in favor of Lillie Ann Jenkins Green against Roland Jee and Connecticut Fire Insurance Co., in solido, is amended to read $2,000.00 and affirmed as amended. The trial court set the expert fee of one doctor at $100.00 but did not set the fee for the other 2 doctors. This court sets the expert fees of all doctors at $100.00 and taxes them as costs of court. The judgment granted in favor of Robert Green in the sum of $395.80 is reversed and judgment granted in favor of Jee and Connecticut dismissing Green’s claim for hospital expenses. All costs of this case, both of the trial and appellate courts, are assessed against defendants.
Amended and affirmed.